## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable A. Bruce Campbell

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| GARY WOODROW FLANDERS, | ) | Case No. 98-24779  ABC |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GARY WOODROW FLANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 13-1456 ABC |
| | ) | |
| EVELYN JANE LAWRENCE, DANIEL A. | ) | |
| WEST, JAMES T. BURGHARDT, and | ) | |
| MOYE WHITE LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative, for Summary Judgment [Docket #46] ("Motion"), filed by Defendants Moye White LLP and James Burghardt.  The Motion has been separately joined in by Defendants Daniel A. West [Docket #45] and Evelyn Jane Lawrence ("Ms. Lawrence") [Docket #47].  Plaintiff/Debtor Gary Flanders ("Debtor") has filed a response in opposition to the Motion [Docket #48]. The Court, having considered the foregoing and the file in this matter, finds as follows.

**Introduction and Procedural Background**

This adversary proceeding results from the complicated confluence of bankruptcy and divorce proceedings.  Debtor's bankruptcy case was filed two years prior to his former spouse's petition for dissolution of their marriage.  Debtor's former spouse was not a co-debtor in his bankruptcy.  The bankruptcy case and divorce case proceeded at the same time, in separate courts.   The liquidation of Debtor's bankruptcy estate resulted in a surplus after full payment, plus interest, to unsecured creditors.  Pursuant to the divorce court's order, the surplus funds remaining after administration of the bankruptcy estate were paid to the registry of the divorce court.  After the bankruptcy case was closed, final orders were issued in the divorce case.  The final orders included a judgment in excess of $500,000 against Debtor in favor of his former spouse.  Following a largely unsuccessful appeal of the final orders in the state courts, Debtor

filed this adversary proceeding. Here he contends that the divorce court's division of marital property, in particular the valuation of a corporation known as Great Northern Transportation Company, and the divorce court's treatment of the bankruptcy surplus violated his discharge injunction and/or the automatic stay.

Defendants moved to dismiss Debtor's First Amended Complaint. While motions to dismiss were pending, Debtor filed a motion for leave to file a Second Amended Complaint. On March 24, 2014, the Court granted Debtor leave to file a second amended complaint, and denied Defendants' pending motions to dismiss, without prejudice. The Court ordered that, if Defendants intended to rely on pleadings not in this Court's record in any future dispositive motion, Defendants should file a motion for summary judgment supported by certified copies of such pleadings. In response to the second amended complaint, Defendants have filed the current Motion, alternatively captioned a motion to dismiss or a motion for summary judgment. The Motion is supported by certified copies of the state court orders upon which Defendants rely, and an affidavit from Defendant James T. Burghardt. Accordingly, the Court will treat the Motion as one for summary judgment. Plaintiff's response does not dispute any of the following material facts upon which the Motion is based.

## Undisputed Material Facts

1. Debtor filed a Chapter 11 bankruptcy case on October 16, 1998. *Docket for Case No. 98-24779 ABC ("Docket") #1.*

2. At the time his bankruptcy was filed, Debtor was married to Ms. Lawrence, but she was not a joint debtor in the bankruptcy. *Amended Final Orders, dated February 10, 2009, in Case No. 00 DR 3896 , Exhibit D to Motion ("Amended Final Orders"), ¶ 2; Docket #1.*

3. Debtor's case was converted to Chapter 7 on December 17, 1999. *Docket #213.*

4. Two years after Debtor's bankruptcy was filed, on October 17, 2000, Ms. Lawrence filed for divorce. The divorce proceeding was filed in the District Court for the District of El Paso County, Colorado ("Divorce Court"). *Amended Final Orders, ¶2.*

5. From and after October 17, 2000, the dissolution proceedings continued in the Divorce Court, where, pursuant to the parties' agreement, a special master was appointed to manage the parties' affairs and pay marital debts. As part of his duties, the special master received and distributed the proceeds from sales of marital assets that were not sold in the bankruptcy. *Id.*

6. On November 8, 2000, the Chapter 7 Trustee of Debtor's bankruptcy estate filed an adversary proceeding ("Adversary Proceeding") against the Debtor, Ms. Lawrence and others, including a corporation known as Great Northern Transportation Company ("GNTC") which was then owned by Ms. Lawrence. *Docket for Adversary Proceeding 00-1539 SBB, #1.*

7. On April 26, 2001, the Bankruptcy Court entered an order approving settlement of the Trustee's claims in the Adversary Proceeding according to the terms of a written agreement between some of the parties.[1] A true and correct copy of this settlement agreement is attached to the Motion as Exhibit A ("Settlement Agreement"). *Docket #510*; *Affidavit of James T. Burghardt, Exhibit J to the Motion ("Affidavit"), ¶ 3*.

8. The Settlement Agreement contemplated that approval by the special master in the divorce proceedings and authorization by the Divorce Court was necessary in order to authorize the Defendants to enter into the Settlement Agreement. It provided that

> Nothing contained in this Settlement Agreement shall be deemed or construed as a consent by the Trustee, the Bankruptcy Estates [Debtor's estate and that of several of Debtor's companies, which had also filed bankruptcy], or any Defendant [a defined term not including Debtor] to the jurisdiction of the Divorce Court over the Trustee, the Bankruptcy Estates, any property of the Bankruptcy Estates, or the performance or interpretation of this Settlement Agreement.

*Settlement Agreement, ¶ 7.*

9. In connection with the Settlement Agreement, the parties executed a mutual release. A true and correct copy of the mutual release is attached to the Motion as Exhibit B ("Release"). *Affidavit, ¶4*.

10. The Release provided that

> [T]he Defendants [including Ms. Lawrence and GNTC] hereby release and forever discharge the Bankruptcy Estates, the Trustee, their respective agents, officers, directors, shareholders, employees, attorneys and professionals, from any and all claims and causes of action that have been made or could have been made in the Adversary Proceeding, whether known or unknown, from the beginning of the world, to the date of this Release.

*Release, ¶ 2.*

11. Defendant James Burghardt ("Burghardt") is an attorney with the law firm Defendant Moye White LLP ("Moye White"). Burghardt represented Ms. Lawrence in connection with the Settlement Agreement and Mutual Release. *Affidavit, ¶ 2*.

12. Debtor received a Chapter 7 discharge on September 4, 2002, and administration of his bankruptcy estate continued for some years thereafter. *Docket #s 617-767*.

---

[1] Debtor was not a party to the Settlement Agreement.

13. On July 20, 2006, the bankruptcy trustee filed his final report showing that all administrative expenses had been paid and that unsecured creditors had been paid 100% of their claims, plus interest. A surplus of $227,777.19[2] remained after liquidation of Debtor's property and payment in full of all claims ("Bankruptcy Surplus"). The proposed distribution in the Trustee's Final Report indicated that the Bankruptcy Surplus was to be "Paid to Debtor." *Docket #750, p.33.*

14. On February 7, 2007, the Divorce Court entered an order regarding how the Bankruptcy Surplus was to be characterized. The Divorce Court's February 7, 2007 order states:

> [The Divorce Court] was informed that [Debtor's] bankruptcy case that was filed in 1998, prior to the filing of this Dissolution of Marriage case, had a $230,000 surplus that had been garnished by the United States Attorney to pay [Debtor's] 2005 Oklahoma federal court criminal judgment of $206,000.
>
> The [Divorce Court] received an Order from the United States District Court for the District of Colorado instructing [the Divorce Court] to determine what portion of the surplus was [Debtor's]. The [Divorce Court], with the permission of counsel, spoke with Magistrate Judge Hegarty, who informed [the Divorce Court] that the garnishment was only intended to attach those funds that belonged to [Debtor] alone and was not intended to attach funds that were deemed marital property.

*Exhibit C to Motion ("Bankruptcy Surplus Order"), p. 1.*

15. The Divorce Court found that all of the Bankruptcy Surplus was marital property. In so finding, the Divorce Court considered Debtor's argument "that the Settlement Agreement and [Release] between Ms. Flanders and the Bankruptcy Trustee in 2001 operated to release any claim she might have to the surplus." The Divorce Court rejected this argument, as follows:

> The Court has carefully read and reviewed [the Settlement Agreement and the Release] and concludes that they did not release any claim Ms. Lawrence might have to the surplus. Bankruptcy surpluses are returned to the debtor, in this case [Debtor]. At the time the bankruptcy was filed the parties were married thus the assets that went into the Bankruptcy estate were martial [sic] property and any surplus coming out is marital property. The Release specifically related only to

---

[2] As a result of an error in the final report (the Trustee's failure to account for a withdrawn claim), the Bankruptcy Surplus was increased to $230,826.83 pursuant to the Trustee's Notice of Amended Proposed Distribution filed on September 29, 2006. *Docket #760, p. 17*.

4

> claims that could have been raised in the adversary proceeding that had been filed against [Ms. Lawrence] by the Trustee. The adversary proceeding claims related to fourteen different claims for relief including fraudulent conveyance claims against both [Debtor] and [Ms. Lawrence]. The Court further concludes that a bankruptcy surplus does not exist with certainty until the bankruptcy is completed and all creditors and interest paid.
>
> Colorado law presumes that property held during a marriage is martial [sic] property. [Debtor] has not proved to the satisfaction of this Court that any portion of the bankruptcy surplus is his separate property.

*Bankruptcy Surplus Order, p. 2.*

16. Having found the Bankruptcy Surplus to be marital property, the Divorce Court "requested" that "the United States District Court for the District of Colorado direct that the bankruptcy surplus be transferred to the Registry Fund of the [Divorce Court] . . . , for distribution as part of the martial [sic] estate." *Id.*

17. Debtor's bankruptcy case was closed on May 12, 2008. *Docket #767.*

18. Nine months later, in February, 2009, the Divorce Court entered the Amended Final Orders. In the Amended Final Orders, the Divorce Court discussed the bankruptcy proceedings, and noted that some marital assets were sold and some marital debt paid in the course of the administration of Debtor's bankruptcy estate. In response to Debtor's argument that because of the bankruptcy proceedings he no longer had any responsibility for marital debts, the Divorce Court ruled:

> [Debtor] has also argued that since all his debts were discharged by the Bankruptcy Court, he is not responsible for any of the remaining debt in the marriage. In addition he argues that the Settlement Agreement . . . and [Release] that settled the bankruptcy adversary proceeding that alleged fraudulent transfer claims against [Debtor], Ms. Lawrence and their companies acted to discharge any responsibility he might have for any debts. This Court disagrees. The Bankruptcy court did not have jurisdiction over the entire marital estate. Further it appears that most of the remaining debt occurred after [Debtor] filed bankruptcy in October 1998.

*Amended Final Orders, ¶ 9.*

19. The Amended Final Orders also valued marital property, including GNTC. The Divorce Court found and concluded as follows:

> [GNTC] is a martial [sic] asset that this Court has jurisdiction over. The only remaining asset of [GNTC] is a shareholder advance receivable of $2,322,000 comprised of a $1,900,000 note given by [Debtor] prior to 1991 and then assigned to Ms. Lawrence when ownership of [GNTC] was transferred to her in 1991 and $422,000 in advances or distributions to Ms. Lawrence during the course of these proceedings. This Court is convinced that the $1,900,000 was used by the parties for marital expenses. Advances or distributions to [Debtor] in the approximate amount of $350,000 have been written off because he was presumed to be insolvent due to his bankruptcy and incarceration. . . . This Court agrees with the expert testimony presented by Mr. Hoffman, Mr. Krems and Mr. Burghardt that in the context of a dissolution of marriage the note and the receivable cancel one another. Thus, this Court concludes that [GNTC] actually has a negative value of $967,176 comprised of: $210,000 estimated taxes due by Ms. Lawrence upon liquidation of [GNTC], $663,461 of federal corporate taxes from 1995 to 2006 and $93,715 of state corporate taxes. [Debtor] argues that [GNTC] actually has a value of $13,581,160.03 based largely on "booking" numerous loan receivables that he claims Ms. Lawrence owes and "rebooking" other items. The Court concludes that an account receivable from Ms. Lawrence causes an equal amount to be a liability on the marital spreadsheet. . . . The Court awards [GNTC] to Ms. Lawrence at a negative $967,176. She shall be responsible for any and all taxes due by [GNTC] regardless of whether they ultimately are more or less than the estimated $210,000 in estimated personal taxes and the estimated corporate taxes of $757,176.

*Amended Final Orders,* ¶ 19-20.

20. The Divorce Court also awarded the Great Northern Land Company, Canyon Quarry Company, and 6 burial plots, all of which it determined were marital property, to Ms. Lawrence. Amended Final Orders, ¶¶ 24, 25, 41.

21. In the Amended Final Orders, a judgment in excess of $564,000 was entered in favor of Ms. Lawrence and against Debtor. A small part of the judgment, $22,867, represented an equalization of the property division, this sum being one-half of the amount by which the value of the marital property awarded to Debtor exceeded the value of the marital property awarded to Ms. Lawrence. The majority of the judgment, $531,754, was attorneys fees that the Divorce Court found Debtor should pay due to his bad faith litigation conduct and his contribution to the delay of the proceedings. The remaining amount was for Debtor's criminal fines and restitution that were paid from marital property. *Amended Final Orders,* ¶ 54.

22. The amount of the attorneys fees Debtor was ordered to pay was corrected from $531,754 to $513,754, and the total amount of the judgment reduced to $563,822, in the Divorce Court's Corrected Amended Final Orders, dated June 22, 2009. *Exhibit E to Motion ("Corrected Final Orders"),* ¶ 54.

6

23. Debtor appealed the Final Orders to the Colorado Court of Appeals, which, on May 26, 2011, upheld the Divorce Court's findings relating to the valuation of GNTC and treatment of GNTC as a marital asset. Specifically, the Court of Appeals ruled that there was "no abuse of discretion by the trial court in valuing [GNTC]." *Exhibit G to Motion ("Court of Appeals Opinion"), p. 8.*

24. The Court of Appeals also "reject[ed] [Debtor's] contention that the trial court erred by effectively extinguishing a $2,322,000 note ostensibly owed by [Ms. Lawrence] to [GNTC]." It found that there was "no abuse of discretion in the trial court's treatment of the $2 million note as a marital asset that was offset by an equal amount of marital debt, and not as a separate debt to [GNTC] that [Ms. Lawrence] was required to pay." *Court of Appeals Opinion, p. 9, 10*.

25. The Court of Appeals found that the Divorce Court erred on a matter not pertinent to this adversary proceeding: the Divorce Court's characterization of Ms. Lawrence's interest in the Lawrence Family Ranch Corporation ("LFRC") as her separate property. The Court of Appeals vacated the portion of the Divorce Court's orders concerning LFRC and remanded for further findings explaining the basis for the Divorce Court's conclusion that LFRC was Ms. Lawrence's separate property. *Id., p. 12-13*.

26. In so remanding, the Court of Appeals ruled that, "[i]f the court finds on remand that [Ms. Lawrence's] interest in LFRC is in fact marital property . . . the entire property division will have to be reconsidered in light of this change to the marital estate." The Court of Appeals also stated, however, that "[a]lthough such reconsideration would necessarily involve the distribution of other marital assets, including [GNTC], because of our disposition of the issues concerning [GNTC], the [Divorce Court] need not reconsider those issues and may rely on its previous findings." *Id., p. 13*.

27. Debtor appealed the Court of Appeals decision to the Colorado Supreme Court. His Petition for Writ of Certiorari was denied on January 7, 2013. *Exhibit I to Motion*.

**The Complaint**

Debtor's Second Amended Complaint ("Complaint") alleges the basic facts set forth above regarding the proceedings in his bankruptcy case and in the divorce. He argues first that Ms. Lawrence had no right to the Bankruptcy Surplus because she waived all claims against his bankruptcy estate in connection with the Settlement Agreement and did not file a proof of claim. Next, Debtor claims that the Divorce Court improperly offset a discharged debt when it treated Debtor and Ms. Lawrence's promissory note to GNTC as a marital debt. Debtor also alleges that the Divorce Court improperly treated shares of stock in Great Northern Land Company and Canyon Quarry Company and the burial plots as marital property. Debtor alleges that these assets were part of his bankruptcy estate, abandoned to him at the close of the bankruptcy case, and that Ms. Lawrence released any claims to them. Debtor further alleges that Ms. Lawrence breached

7

the Settlement Agreement and that she was unjustly enriched by pursuing claims to marital property in the divorce. Debtor requests the Court to find Ms. Lawrence and her attorneys Defendants Daniel West ("West"),[3] Burghardt, and Moye White in contempt for violation of the discharge injunction of 11 U.S.C. § 524(a), for their actions in pursuing and obtaining the Divorce Court's orders concerning the Bankruptcy Surplus and the division of marital property.

Debtor seeks sanctions for this alleged contempt, including attorneys fees and consequential and punitive damages. He also seeks injunctive and declaratory relief essentially voiding the Divorce Court's orders concerning the division of marital property and prohibiting any of the Defendants from enforcing the judgment entered by the Divorce Court. Defendant has also claimed consequential damages against Ms. Lawrence in the amount of the Bankruptcy Surplus and in the amount Debtor claims is due on the promissory note to GNTC.

### The Motion for Summary Judgment

Defendants argue that to succeed on all the claims in his Complaint, Debtor must relitigate matters that have been litigated and decided by the Divorce Court. Because such relitigation is precluded by the doctrines of issue and/or claim preclusion, Defendants argue, Debtor's Complaint should be dismissed in its entirety.

Defendants also argue that Debtor has no standing to seek damages arising out of the allegedly contemptuous conduct because, to the extent that Defendants' violation of the bankruptcy court's orders and/or injunction has produced any harm, the harm has been suffered by the bankruptcy court, and is this court's, not Debtor's, to vindicate. Defendants further contend that, because they were successful in their claim in the Divorce Court, they could not have knowingly violated the bankruptcy court's orders and injunction such as would give rise to a finding of contempt.

Finally, Defendants argue that, under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to review, reverse, or vacate the Divorce Court's orders.

### Debtor's Response

Debtor asserts that the Divorce Court had no jurisdiction to make a determination concerning discharge of his debts, or to interpret the Settlement Agreement and Release, and that its orders regarding the Bankruptcy Surplus and valuation of marital property are "void *ab initio*," as a result of this lack of jurisdiction and/or because they were entered in violation of the automatic stay or the discharge injunction. Debtor asserts that the issues raised in this adversary proceeding were not litigated and decided by the state court and that they are not barred by the

---

[3] Debtor alleges that West represents Ms. Lawrence in the divorce proceedings. It does not appear that any of the Defendants dispute this allegation.

doctrine of issue preclusion. He disputes Defendants' argument that claim preclusion bars his claims, asserting that the divorce case and this adversary proceeding do not involve the same claim, that the Divorce Court lacked jurisdiction, and that the discharge order from his bankruptcy case was the "first judgment," for claim preclusion purposes.

Debtor also disputes Defendants' argument that he lacks standing to seek sanctions for Defendants' allegedly contemptuous conduct or for Ms. Lawrence's alleged breach of the Settlement Agreement and Release.

Finally, Debtor argues that the *Rooker-Feldman* doctrine does not deprive this court of subject matter jurisdiction because a bankruptcy court can override a state court judgment entered in violation of the discharge injunction or automatic stay because such a judgment is void *ab initio*. Debtor asserts that there is a specific exception to the *Rooker-Feldman* doctrine when the state court judgment is void because it was entered in violation of the discharge injunction.

## Discussion

### A. Summary Judgment Standards

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 587-88, 106 S.Ct. 1348 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991). The movant bears the initial burden of establishing that summary judgment is appropriate. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986).

### B. *Rooker-Feldman*

*Rooker-Feldman* is a doctrine that recognizes that lower federal courts are prohibited from exercising appellate jurisdiction over state court judgments. *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir.2012). Because *Rooker–Feldman* concerns this Court's subject matter jurisdiction, it must be considered before proceeding to the parties' other arguments. *Lance v. Coffman,* 549 U.S. 437, 439, 127 S.Ct. 1194 (2007).

Prior to 2005, the Supreme Court had only twice denied federal court jurisdiction under the *Rooker Feldman* doctrine. Despite this fact, lower federal courts applied the doctrine expansively and frequently and at times confused the doctrine with principles of preclusion. In 2005, however, in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517

(2005), the Supreme Court corrected the lower courts' misperception of the breadth of *Rooker Feldman* and limited the doctrine, holding that it

> is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

544 U.S. at 284.

The *Exxon Mobil* decision also clarified that *Rooker-Feldman* is distinct from principals of preclusion, and that a court is not barred from exercising jurisdiction under *Rooker–Feldman* even if a plaintiff attempts to litigate in federal court a matter previously litigated in state court, so long as the plaintiff "presents some independent claim." *Id.* at 293, quoting *GASH Assocs. v. Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993). This is true even if a finding in the federal plaintiff's favor "denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.* In such a case, "state law determines whether [he] prevails under principles of preclusion." *Id.*

As explained by the Second Circuit Court of Appeals, the *Exxon Mobil* case demonstrates that

> there are four requirements for the application of *Rooker–Feldman*. First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)(internal quotation marks omitted).

Here there is no question that the first and fourth elements of *Rooker-Feldman* exist. Debtor was the "loser" in the Divorce Court, and this adversary proceeding was filed after the conclusion of the state court proceedings.[4] The determination of the remaining two *Rooker-*

---

[4] In *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006), the Tenth Circuit Court of Appeals stated that, "[u]nder *Exxon Mobil*, *Rooker-Feldman* applies only to suits filed after state proceedings are final." It cited with approval the following description of "finality" in the context of a *Rooker-Feldman* analysis:

> (1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (2) if the state action has reached a point where neither party seeks further action; or (3) if the state court

10

*Feldman* prerequisites is complicated by the Debtor's pleadings, which are rambling and repetitive, and which demonstrate Debtor's disagreement with many factual findings made by the Divorce Court. To the extent Debtor requests this Court to correct alleged fact-finding errors made by the Divorce Court – such as the Divorce Court's findings regarding who were the obligors on the promissory note to GNTC, the balance of the note, or the amount of accrued interest – and to the extent Debtor seeks outright reversal of the Divorce Court's judgment, this Court lacks subject matter jurisdiction under *Rooker-Feldman*. On the other hand, to the extent Debtor seeks a finding of contempt and sanctions for Defendants' alleged willful violation of his discharge injunction, this is an independent claim which this Court is not barred from adjudicating by virtue of *Rooker-Feldman*. See *In re Barrett*, Case No. 86-01378 ABC, December 19, 2006 [Docket # 101]. By seeking such relief, Debtor is not seeking "review and rejection" of the Divorce Court's judgment. Instead, he seeks sanctions for alleged violations of a federal court injunction. To the extent that success on his contempt claims seeks relitigation of issues decided by the Divorce Court, principles of preclusion will govern the result.

The more difficult analysis for *Rooker-Feldman* purposes is posed by Debtor's request that this Court declare the Divorce Court's Bankruptcy Surplus order and Amended Final Orders to be "void *ab initio*" as having been entered in violation of his discharge injunction. Courts have reached differing conclusions regarding whether the discharge injunction of 11 U.S.C. § 524(a)(1), which "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged," is an exception to the *Rooker-Feldman* doctrine. Compare *Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559 (8th Cir. 2000), *In re Toussaint* 259 B.R. 96 (Bankr. E.D.N.C. 2000) and *In re Candidus*, 327 B.R. 112 (Bankr. E.D.N.Y. 2005)(holding that *Rooker-Feldman* precludes

---

proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.

446 F.3d 1027 at 1032, n.2., quoting *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F. 3d 17, 24 (1st Cir. 2005)(internal quotation marks omitted).

In this case, although the Colorado Court of Appeals issued a limited remand so that the Divorce Court could explain the reasons for its conclusion that LFRC was Ms. Lawrence's separate property, the Court of Appeals decision finally resolved the "federal questions" concerning the distribution of the Bankruptcy Surplus and other surplus property of the bankruptcy estate, and the valuation of GNTC in light of the Debtor's discharge. Because of the Colorado Supreme Court's denial of Debtor's petition for writ of certiorari, there is no longer any ability for review or reversal of the state courts' conclusions on these issues. Thus, the Divorce Court's Bankruptcy Surplus Order and Amended Final Orders are "final" for purposes of *Rooker-Feldman* analysis.

bankruptcy court's review of state court determination of whether a debt is discharged) with *In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001) and *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich*), 229 B.R. 777 (9th Cir. BAP 1999)(*Rooker-Feldman* does not prevent collateral attack in bankruptcy court on state court judgment that wrongly construes the discharge injunction; such a state court judgment is "void").

The legislative history of Section 14f of the Bankruptcy Act, from which the current Section 524 was derived, suggests that Congress did intend the discharge injunction to be a vehicle for debtors, who did not raise the affirmative defense of bankruptcy in a post-discharge collection suit, to have a resulting judgment declared "void" as in violation of the injunction. The legislative history states that

> [T]he major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors. Under present law creditors are permitted to bring suit in State courts after a discharge in bankruptcy has been granted and many do so in the hope the debtor will not appear in that action, relying to his detriment upon the discharge. Often the debtor in fact does not appear because of such misplaced reliance, or an inability to retain an attorney due to lack of funds, or because he was not properly served. As a result a default judgment is taken against him and his wages or property may again be subjected to garnishment or levy. All this results because the discharge is an affirmative defense which, if not pleaded, is waived.

H. Rep. No. 91-1502, 91st Cong., 2d Sess. 1-2 (1970).

If, in a case where the debtor failed to raise the affirmative defense of discharge, *Rooker-Feldman* prevented a state court judgment entered in violation of the discharge injunction from being void, section 524(a)(1) would have no application to post-bankruptcy judgments, and would not effectuate the stated legislative purpose. In the case where a debtor fails to raise his discharge in a post-bankruptcy lawsuit, the discharge injunction is essentially an exception to *Rooker Feldman's* prohibition of "reversal" of state court judgments.

It is a different situation, however, where a debtor raises and litigates the effect of his discharge in a state court proceeding and loses. In such a case, this Court agrees with the courts in *In re Candidus* and *In re Toussaint*, *supra*, that as long as the state court has concurrent subject matter jurisdiction to determine dischargeability,[5] i.e. concerning debts other than those described

---

[5] Debtor has challenged the Divorce Court's jurisdiction to interpret the Settlement Agreement and Release based on the provision in ¶ 7 of the Settlement Agreement, which is quoted above in paragraph 8 of the list of undisputed facts. The fact that the parties to the Settlement Agreement (which did not include Debtor) agreed that it did not constitute a "consent" to jurisdiction of the Divorce Court over the bankruptcy estate or its property, or the

in 11 U.S.C. § 523(a)(2), (4), or (6),  principles of issue preclusion control whether the debtor can relitigate that issue by means of an adversary proceeding in bankruptcy court to declare the judgment "void" under 11 U.S.C. § 524(a)(1).

Here, the debt was not of a type described in § 523(a)(2), (4), or (6), and the parties do not dispute that Debtor's underlying obligation on the note to GNTC, and any claim by Ms. Lawrence for contribution from Debtor on account of their joint liability, was discharged in Debtor's bankruptcy.  The disagreement is whether the Divorce Court's consideration of the note as a "marital debt" in its property division analysis amounted to the collection of a discharged debt in violation of the discharge injunction.  Defendants contend that Debtor raised this issue in the Divorce Court, and the issue was decided against him.  If this is so, Debtor's claims for a declaration that the Divorce Court's Orders are "void," as well as his claims for sanctions, must be analyzed, not on the basis of the *Rooker-Feldman* doctrine, but on principles of issue preclusion.

### C.  Issue Preclusion

Issue preclusion (sometimes referred to as collateral estoppel) precludes relitigation of an issue that was litigated and decided in a previous proceeding.  It is a doctrine designed to promote the fundamental policies of finality, economy, consistency, and comity in the judicial process.  *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 n.6, 102 S.Ct. 1883, 1889 n.6 (1982).  Generally, collateral estoppel precludes parties to a previous action from relitigating issues of fact or law actually litigated and determined by a valid and final judgment.  RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982).

Rules for application of preclusion principles are determined by the law of the forum in which the prior judgment was rendered.  *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327 (1985).  Thus, a judgment is afforded the same preclusive effect in a subsequent action brought in a different forum that it would be afforded if the latter action were brought in the original forum.  In this case, Colorado law governs the collateral estoppel effect of the Divorce Court's orders.

Colorado law recognizes issue preclusion as a doctrine that "is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo. 1999)(internal citation omitted).  Under Colorado law, the following elements must be shown in order for issue preclusion to apply:

---

interpretation of the Settlement Agreement, did not deprive the Divorce Court of any concurrent jurisdiction it in fact possessed to determine the extent of Debtor's discharge, either before or after the bankruptcy case was closed.

>(1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*McNichols v. Elk Dance Colorado, LLC*, 139 P.3d 660, 667 (Colo. 2006).

In this case there is no question that the party against whom estoppel is asserted, Debtor, was a party to the proceedings in the Divorce Court. In addition, according to Colorado law, the Divorce Court's orders are "final," for purposes of issue preclusion analysis. According to the Colorado Supreme Court's decision in *Rantz v. Kaufman*, 109 P.3d 132 (Colo. 2005), a judgment is final, for purposes of issue preclusion, if it is "'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and *there was an opportunity for review.*'" 109 P.3d at 141, quoting *Carpenter v. Young* 773 P.2d 561, 568 (Colo. 1989)(emphasis in original). The court in *Rantz* held that the requirement that there was "an opportunity for review," means that a judgment is not final for purposes of issue preclusion while an appeal is pending. *Id.* Here, the Divorce Court's orders are not tentative, and because of the limited nature of the remand from the Court of Appeals and the denial of Debtor's appeal to the Colorado Supreme Court, there is no longer a pending appeal concerning the issues involved in this adversary proceeding. See discussion at note 4, *supra*.

Under Colorado law, the determination of whether Debtor had a full and fair opportunity to litigate the issues in the prior proceeding depends on

>whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, whether the party . . . has sufficient incentive to vigorously assert or defend the position . . ., and the extent to which the issues are identical.

*McNichols v. Elk Dance Colorado, LLC*, 139 P.3d at 669. The remedies and procedures in the divorce case and those involved here are virtually identical, and Debtor had ample incentive to, and apparently did, vigorously assert his arguments relating to the division of property in the divorce case. The extent to which the issues are identical is more fully discussed below in connection with the final element of issue preclusion: whether an identical issue was actually litigated and necessarily decided in the prior proceeding.

It is clear from the Divorce Court's findings that the Debtor raised the identical issues he asserts here throughout the course of the divorce case. First, Debtor argues here that Ms. Lawrence released any and all claims to any property remaining after the conclusion of his bankruptcy case, including the stock in Great Northern Land Company and Canyon Quarry

14

Company, the burial plots, and the Bankruptcy Surplus in connection with her execution of the Settlement Agreement and Release. The Divorce Court's Orders show that this precise issue was raised by Debtor and decided against him in the divorce case. The Divorce Court noted that Debtor argued "that the Settlement Agreement and [Release] between Ms. Flanders and the Bankruptcy Trustee . . . operated to release any claim she might have to the [Bankruptcy Surplus]," and ruled that

> The Court has carefully read and reviewed [the Settlement Agreement and the Release] and concludes that they did not release any claim [Ms. Lawrence] might have to the surplus. Bankruptcy surpluses are returned to the debtor, in this case [Debtor]. At the time the bankruptcy was filed the parties were married thus the assets that went into the Bankruptcy estate were martial [sic] property and any surplus coming out is marital property. The Release specifically related only to claims that could have been raised in the adversary proceeding that had been filed against [Ms. Lawrence] by the Trustee. The adversary proceeding claims related to fourteen different claims for relief including fraudulent conveyance claims against both [Debtor] and [Ms. Lawrence]. The Court further concludes that a bankruptcy surplus does not exist with certainty until the bankruptcy is completed and all creditors and interest paid.
>
> Colorado law presumes that property held during a marriage is martial [sic] property. [Debtor] has not proved to the satisfaction of this Court that any portion of the bankruptcy surplus is his separate property. . . .

*Bankruptcy Surplus Order, p. 2.*

Debtor is thus precluded from arguing here that the Divorce Court improperly treated the Bankruptcy Surplus, the shares of stock in Great Northern Land Company and Canyon Quarry Company, and the burial plots as marital property because Ms. Lawrence released her claims against this property in connection with the Settlement Agreement and Release. He is also precluded from asserting any claim that, by pursuing her claims to these or any other items of marital property, Ms. Lawrence violated the Settlement Agreement and Release.

It is also evident that the Debtor argued that his bankruptcy discharge prevented any consideration of his liability on the GNTC note in the Divorce Court's valuation of and division of marital property. The Divorce Court ruled as follows.

> [Debtor] has also argued that since all his debts were discharged by the Bankruptcy Court, he is not responsible for any of the remaining debt in the marriage. In addition he argues that the [Settlement Agreement and Release] that settled the bankruptcy adversary proceeding that alleged fraudulent transfer claims against [Debtor], Ms. Lawrence and their companies acted to discharge any

15

> responsibility he might have for any debts. This Court disagrees. The Bankruptcy court did not have jurisdiction over the entire marital estate. Further it appears that most of the remaining debt occurred after [Debtor] filed bankruptcy in October.

*Amended Final Orders,* ¶ 9.

Having so considered the effect of Debtors discharge, the Divorce Court went on to determine that the obligation to GNTC was a marital debt which could be considered in determining the division of marital assets.

The Divorce Court's interpretation of the Settlement Agreement and Release and its determination of the effect of Debtor's discharge were necessary to the Divorce Court's orders for payment of the Bankruptcy Surplus to the Divorce Court and to its division of the marital assets. Because all of the elements of issue preclusion are met, Debtor is barred from relitigating those matters here.[6]

### D. The Automatic Stay and the Bankruptcy Surplus Order

**1. Automatic Stay as Against Estate Property**

The automatic stay arising from the filing of a bankruptcy petition prevents, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Under section 362(c)(1), "the stay of an act against property of the estate . . . continues until such property is no longer

---

[6] The application of the doctrine of issue preclusion is a matter of equity and a court may decline to apply the doctrine even when the elements for its application are present. *Arapahoe County Public Airport Authority v. F.A.A.*, 242 F.3d 1213, 1220 (10th Cir. 2001). Even had this Court determined not to apply the doctrine, Debtor would lose on the merits of this claim. Debtor's discharge of personal liability on the promissory note to GNTC only barred collection of the note as a personal liability of the Debtor. 11 U.S.C. § 524(a)(2). It did not bar the Divorce Court from characterizing the debt as a marital debt. The Divorce Court's analysis of the marital nature of the debt, as well as the overall property division between Ms. Lawrence and Debtor, was clearly within the broad discretion of the Divorce Court to make an equitable distribution of marital property after considering all relevant factors, including the contributions of each spouse, the value of property set apart to each spouse, the economic circumstances of each spouse, and any increase, decrease, or depletion in the value of any separate property during the marriage. C.R.S. § 14-10-113; *In re Marriage of Cardona and Castro*, 316 P.3d 626, 630 (Colo. 2014). See also *In re Marriage of Hunt*, 909 P.2d 525, 537 (Colo. 1995)(trial court has great latitude to effect an equitable distribution based upon the facts and circumstances of each case).

property of the estate." In a Chapter 7 case, property remains property of the estate until it is administered by the trustee or abandoned. If it is not abandoned during the course of the case, scheduled property is automatically abandoned to the debtor upon the closing of the case under 11 U.S.C. § 554(c).

Debtor argues that the Bankruptcy Surplus, which consisted of funds remaining after the liquidation of the estate's property and payment of all allowed claims, was not abandoned or distributed to him, and was therefore estate property at the time the Divorce Court issued the Bankruptcy Surplus Order, on February 7, 2007, directing that the funds be paid to the registry of the Divorce Court. He argues that the Bankruptcy Surplus Order was void *ab initio* because it was issued in violation of the stay.

The Court first notes that there is some question whether the Bankruptcy Surplus was, in fact, estate property, or whether it had already been distributed to Debtor at the time the Bankruptcy Surplus Order entered. The Trustee's final report, filed on July 20, 2006, some six months prior to the Bankruptcy Surplus Order, indicates that the excess funds were to be "paid to debtor." *Docket #750.* The Bankruptcy Surplus Order itself notes that the excess funds may have been distributed out of the bankruptcy estate, though not actually received by Debtor, because of the garnishment issued by the United States Attorney for collection of a post-petition federal criminal judgment. It appears from the Bankruptcy Surplus Order that the funds were being held in the registry of the United States District Court on February 7, 2007, indicating that they were, at that time, no longer property of the bankruptcy estate.

Assuming, however, for the purpose of the motion for summary judgment, that the funds had not been distributed to Debtor and remained estate property, Debtor has no standing to request an order declaring the Bankruptcy Surplus Order void *ab initio*. One of the purposes of the automatic stay is to protect the estate and the interests of creditors in allowing for liquidation of the estate to proceed in an orderly manner. *In re Cook*, 2012 WL 1356490 (10th Cir. BAP 2012)(unpublished decision), aff'd 520 Fed.Appx. 697 (10th Cir. 2013)(unpublished decision); *Bucchino v. Wells Fargo Bank, N.A. (In re Bucchino)*, 439 B.R. 761, 767-74 (Bankr. D.N.M. 2010). A creditor who pursues an action to obtain estate property interferes with this orderly liquidation and violates the automatic stay of 11 U.S.C. § 362(a)(3). Any injury from such a violation is suffered by the estate, and the trustee, as representative of the estate, is the only party with standing to seek redress for such a violation, unless and until the property is abandoned by the trustee or the case is closed. *In re Cook, supra*.

### 2. Automatic Stay as Against Actions to Collect from the Debtor

Assuming, as appears to be the case, that the surplus funds from the estate had been distributed to the Debtor, either actually or constructively, and were no longer estate property at the time the Bankruptcy Surplus Order entered, the Court will address the automatic stay as it applies to the Debtor. The automatic stay protects a debtor from the following: (1) the

commencement or continuation of judicial proceedings against the debtor that were or could have been commenced before the commencement of the case; (2) the enforcement, against the debtor, of a judgment obtained before the commencement of the case; (3) any act to enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case; (4) any act to recover a claim against the debtor that arose before the commencement of the case; or (5) the setoff of any debt owing to the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a).

The automatic stay of any action other than an action against property of the estate terminates upon the earliest of (a) the time the case is closed; (b) the time the case is dismissed; or (c) in a individual Chapter 7 case, the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2). Here, Debtor's Chapter 7 discharge was granted on September 4, 2002, more than four years prior to the entry of the Bankruptcy Surplus Order. The entry of the Bankruptcy Surplus Order did not violate the stay of any acts against the Debtor or his property.[7]

## Conclusion

The *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction to review or reverse the Divorce Court's Orders regarding property division between Debtor and his former spouse. Because Debtor already litigated his arguments about the effect of the Settlement Agreement, the Release, and his discharge on the division of marital property, and the Divorce Court rejected those arguments, he is precluded from relitigating those issues here. By virtue of this preclusion, Debtor may not assert his claims for declaratory relief that the Divorce Court's Amended Final Orders were void, or for a finding of contempt or sanctions against any Defendant for alleged violations of the discharge injunction. Issue preclusion also bars Debtor's claims that Ms. Lawrence or her attorneys breached the Settlement Agreement or Release. Finally, Debtor has no standing to litigate whether the Bankruptcy Surplus Order violated the automatic stay of actions against estate property, and the stay of any other action had already terminated long before entry of that order. Defendants are accordingly entitled to judgment as a matter of law on all of the claims for relief in Debtor's Second Amended Complaint, and it is,

---

[7] The discharge injunction substitutes for the automatic stay to protect the Debtor and his post-petition property from collection actions on pre-petition debts, but as discussed above, the Divorce Court considered the effect of Debtor's discharge when entering its orders regarding the division of marital property, and Debtor is precluded from relitigating the effect of his discharge here.

ORDERED that Defendants' Motion for Summary Judgment is GRANTED, and this adversary proceeding is dismissed.

Dated: September 16, 2014

BY THE COURT:

_____
A. Bruce Campbell,
United States Bankruptcy Judge